1
2
3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

4
5
6
7
8
9
10
11

BRADLEY COOPER, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

THORATEC CORPORATION, GERHARD F. BURBACH, TAYLOR C. HARRIS, and ROXANNE OULMAN

Defendants.

Case No. 4:14-cv-00360-CW

Hon. Claudia Wilken

**CLASS PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

NOTE ON MOTION CALENDAR:

March 5, 2019, 2:30 PM

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT.......................................... 2

       A.    The Litigation.............................................................................................. 3

       B.    The Settlement ........................................................................................... 4

III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................... 4

       A.    Legal Standard ........................................................................................... 4

       B.    The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive
             Negotiations ............................................................................................... 6

       C.    Each *Churchill* Factor Considered at This Stage Supports Preliminarily Approving the
             Settlement ................................................................................................. 7

             1.    The strength of Plaintiff's case, risk of further litigation, and risk of maintaining
                   class action status........................................................................... 7

             2.    Amount offered in settlement ........................................................... 8

             3.    Extent of discovery completed and the stage of the proceedings ......... 9

             4.    The experience and views of counsel ................................................ 10

IV.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED 11

V.     THE PROPOSED CLASS NOTICE SHOULD BE APPROVED............................... 11

VI.    CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Betorina v. Randstad US, L.P.*,
   No. 15-cv-3646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)....................................7

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)...............................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................5, 7, 8, 10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...............................................................5

*Dunakin v. Quigley*,
   No. 14-cv-567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 9, 2017) ...............................6

*Gragg v. Orange Cab Co.*,
   No. C12-0576RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017) ..............................6

*Ikuseghan v. Multicare Health Sys.*,
   No. 14-cv-5539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016).......................8, 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................5, 6, 7

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................5

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ......................9

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................9

*In re Oracle Sec. Litig.*,
   No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994).............................11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................10

*Murillo v. Pac. Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) ...........................................................5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................5

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................5, 8

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
    No. C14-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016)......................5, 6, 8, 9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................6, 8, 10, 11

*Rosenburg v. I.B.M.*,
    No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)......................11

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    No. EDCV 08-482-VAP, 2010 WL 2486346 (C.D. Cal. June 15, 2010)...................11

*Scott v. United Servs. Auto. Ass'n*,
    No. C11-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) ....................6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................5

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ....................................................................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................6

*Wilson v. Maxim Healthcare Servs., Inc.*,
    No. C14-789RSL, 2017 WL 2988289 (W.D. Wash. June 20, 2017) ....................5

**Statutes**

Exchange Act ........................................................................................1

PSLRA ..........................................................................................13, 14

**Rules**

Fed. R. Civ. P. 23 ...............................................................................4, 5, 11, 13

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*
    (2017), *available at*: https://www.cornerstone.com/Publications/Reports/Securities-
    Class-Action-Settlements-2016-Review-and-Analysis ......................................9

Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ...................5

*New England Journal of Medicine* ...................................................................................................1

*USA Today* ....................................................................................................................................2, 12

1    Class Representative Todd Labak ("Class Plaintiff" or "Labak"), individually, and on behalf the

2    Class, moves this Court for Preliminary Approval of the Proposed Settlement Agreement and Notice to

3    the Class on the Class's claims that Defendants Thoratec Corporation ("Thoratec" or the "Company"),

4    Gerhard F. Burbach, Taylor C. Harris and David V. Smith (collectively, "Defendants") violated Section

5    10(b) and 20 (a) of the Securities Exchange Act of 1934 (the "Exchange Act").

6    **I.    INTRODUCTION**

7        Class Plaintiff has reached an agreement to settle this action with Defendants regarding the

8    alleged Exchange Act violations.   Thoratec was a medical device company that manufactured and

9    marketed a Ventricular Assist System, the HeartMate II, during the Class Period. Thoratec common

10   stock traded on the NASDAQ Global Market under the symbol "THOR."   The class action relates to

11   allegations of securities violations by Defendants related to rates of thrombosis occurring with the

12   HeatMate II during the Class Period, and the effects on the Company's financial health as a result of the

13   disclosure of thrombosis rates by the *New England Journal of Medicine*.

14       Plaintiffs allege that, during the Class Period, Thoratec's stock price was artificially inflated as a

15   result of a series of materially misleading statements regarding the thrombosis rates of the HeartMate II

16   and effects on the Company's finances as result of the disclosure thereof.   Plaintiffs further contend that

17   Defendants made the alleged statements knowing them to be false or misleading, or recklessly

18   disregarding their false or misleading natures, and that investors suffered injury as a result of the alleged

19   inflation when the truth was disclosed.   The terms of the Settlement are contained in the Stipulation of

20   Settlement (the "Stipulation") attached as Appendix 1 ("App. 1") hereto.[1] The Class Representative

21   seeks entry of an order:

22       • granting preliminary approval of the Settlement;

23       • approving the proposed form and method of giving Class Members notice of the Action
24         and proposed Settlement;

25       • directing that notice be given in said proposed form and manner; and

26       • setting a hearing date for the final approval of the Settlement and Plan of Allocation,
           entering Judgment dismissing the Action, awarding attorneys' fees and expenses to Class
27         Counsel, and approving a reimbursement award to Class Representatives.

28   _____
     [1] Unless otherwise noted, capitalized terms are defined in the Stipulation.

The Settlement provides substantial benefits to the Class.  In full and final settlement of all claims asserted or referred to in the Action, Defendants agree to pay the Class $11,900,000 in cash.

The proposed Settlement addresses Plaintiffs' litigation objectives and falls well within the range of reasonable settlement outcomes.  The Settlement was negotiated by lawyers experienced in complex litigation who had the benefit of mediation with one of the leading mediators in complex litigation.  For these reasons, the Settlement is fair, reasonable, and adequate, and the attached order (the "Preliminary Approval Order") should be entered by this Court (App. 1, Ex. B) and notice should be provided to the Class Members (App. 1, Ex. A).

The proposed Settlement now before the Court for preliminary approval provides for the payment of $11,900,000 in cash plus accruing interest for the benefit of the Class (the "Settlement"). The proposed Settlement would resolve all claims and all defenses as to all parties in this litigation.  As discussed in detail below, Class Plaintiff and Class Counsel submit that the proposed Settlement is in the best interest of the Class and represents a significant recovery, particularly in light of the significantly complex nature of this case.  The Settlement was mediated by an experienced mediator in securities litigation, Michele Yoshida.  Accordingly, Class Plaintiff respectfully moves for preliminary approval of the proposed Settlement.

Upon preliminary approval, Class Plaintiff will notify Class members of the proposed Settlement by mailing the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release to them.  The Notice advises Class members of (i) the essential terms of the proposed Settlement; (ii) the proposed plan for allocating the Settlement proceeds among Class members; (iii) Class Counsel's application for attorneys' fees of 25%, and reimbursement of expenses not to exceed $500,000; and (iv) the application for a Compensatory Award to the Class Plaintiff not to exceed $10,000.  The Notice also sets forth the procedure for objecting to the proposed Settlement or opting out of the Class.  A Summary Notice published in *USA Today* also will be widely disseminated by Class Plaintiff.

## II.      SUMMARY OF THE LITIGATION AND SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.     The Litigation

This Action was commenced on January 24, 2014, with the filing of a complaint (ECF No. 1) by Bradley Cooper styled as *Cooper v. Thoratec Corp*., et al., (No. 4:14-cv-00360-CW) in this District.  On April 21, 2014, the Court entered an order appointing Mr. Cooper as Lead Plaintiff and approved his selection of Pomerantz LLP ("Pomerantz") as Lead Counsel, as well as his selection of Glancy Prongay & Murray LLP (then known as Glancy Binkow & Goldberg LLP) as Liaison Counsel.

Lead Plaintiff filed a consolidated class action complaint ("CAC") on June 20, 2014.  Defendants moved to dismiss the CAC on August 19, 2014.  By order dated November 26, 2014 the Court granted without prejudice Defendants' motion to dismiss. On January 20, 2015, Lead Plaintiff and then-Proposed Class Representative Labak (together "Plaintiffs") filed a Second Amended Complaint ("SAC" or the "Complaint"). On November 10, 2015, after full briefing, the Court dismissed the SAC with prejudice, and entered final judgment in favor of Defendants.

On December 2, 2015, Plaintiffs filed a Notice of Appeal with respect to the Court's dismissal of the SAC.   On October 4, 2017, following briefing and oral argument, the Ninth Circuit Court of Appeals (the "Appellate Court") reversed the District Court's dismissal of the SAC and remanded the action for further proceedings.  The Appellate Court issued a Mandate on October 26, 2017.

On remand, Plaintiffs promptly commenced document discovery.   On January 15, 2018, Plaintiffs filed their motion for class certification.  Plaintiffs produced documents to Defendants in connection with class certification, and also defended the depositions of Mr. Labak and Plaintiffs' expert, Dr. Zachary Nye.  On March 29, 2018, Defendants filed their opposition to class certification. Plaintiffs then took the deposition of Defendants' expert, Professor Allen Ferrell, and filed their reply in support of class certification, and on May 1, 2018, the District Court heard oral argument.

On May 8, 2018, the Court issued its Order Granting Class Certification (the "Order") appointing Mr. Labak as Class Representative, appointing Pomerantz as Class Counsel, and certifying the following class:

All persons or entities that purchased or otherwise acquired the common stock of Thoratec Corporation between May 11, 2011 and August 6, 2014, both dates inclusive.  Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and

directors of Thoratec and any subsidiary thereof, members of their immediate families and their legal representatives, heirs successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

The parties subsequently engaged in extensive discovery, including Class Plaintiff's review of over 96,000 documents that Defendants and third parties produced.

### B.     The Settlement

Counsel for the Class and Defendants have engaged in arms-length negotiations to settle the claims in this Action.  These negotiations included extensive mediation briefing and expert reports, as well as a full day mediation session overseen by Michelle Yoshida on June 5, 2018 in New York.  The mediation did not culminate in a settlement.  After additional mediation briefing and evidentiary proffers, with the assistance of mediator Yoshida, the parties reached an agreement based on the mediator's recommendation.

Class Plaintiff believes that the claims asserted in the litigation are strong and that investigation and discovery have unearthed sufficient evidence to demonstrate that the Settling Defendants are liable. Nevertheless, the expense and length of continued proceedings necessary to prosecute the litigation through trial and appeals carries significant risk given the complexity of the case and the defenses raised by the Defendants. The Settlement represents a significant portion of recoverable damages, well within the range deemed reasonable by federal courts.  Using a standard multi-trader model to calculate aggregate damages, losses here were estimated up to $147 million by Plaintiffs' damages consultant. The $11,900,000 Settlement, therefore, represents a recovery of 8%, which is above the median percentage of recoveries in securities class action settlements.

### III.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.     Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class . . . may be settled . . . only with the court's approval."). "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class

action litigation is concerned.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action law suits").

Approval of a class action settlement requires two stages of judicial approval: (i) preliminary approval, followed by the distribution of notice to the class and (ii) final approval. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages."); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the preliminary approval stage, the court determines whether the "proposed settlement [is] within the range of final approval" such that notice should be disseminated to the class. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016); *see also* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 at 3839 (4th ed. 2002).

While the Ninth Circuit has a "strong judicial policy" favoring settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), before the Court preliminarily approves a class action settlement, it "has a responsibility to review a proposed class action settlement to determine whether the settlement is 'fundamentally fair, adequate, and reasonable,'" *Wilson v. Maxim Healthcare Servs., Inc.*, No. C14-789RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)); Fed. R. Civ. P. 23(e).

Courts generally look to two guideposts in deciding whether to preliminarily approve the settlement: (1) whether there are any signs of collusion between class counsel and the Defendants, and (2) whether the so-called *Churchill* factors suggest the settlement is fair. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). At the preliminary approval stage, this Court can conduct a "less

searching" inquiry than at final approval, and "seek[] merely to identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink, Inc.*, 2016 WL 4052588, at \*4 (citation omitted).

**B.     The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations**

The proposed settlement is the result of extensive adversarial litigation and arm's-length negotiations facilitated by a neutral third-party mediator.   "A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery."  *Dunakin v. Quigley*, No. 14-cv-567-JLR, 2017 WL 123011, at \*2 (W.D. Wash. Jan. 9, 2017); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2017 WL 785170, at \*1 (W.D. Wash. Mar. 1, 2017) (granting preliminary approval where Settlement "Agreement resulted from extensive arm's-length negotiations, with participation of an experienced mediator").   Here, the parties reached a settlement only after a mediator's proposal was evaluated and ultimately accepted by the parties.

None of the factors identified by the Ninth Circuit as "signs" of a potentially collusive settlement are present here—(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," *In re Bluetooth*, 654 F.3d at 947.

Class Counsel will seek the standard benchmark for fees in this Circuit, 25% of the settlement fund, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).   Apart from a modest request for reimbursement of time and expenses requested by the Class Plaintiff, no class member will be given preferential treatment at the expense of another.  *See Scott v. United Servs. Auto. Ass'n*, No. C11-1422-JCC, 2013 WL 12251170, at \*1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class") (citations omitted).   Nor does the stipulation contain a "clear sailing" provision. *In re Bluetooth*, 654 F.3d at 947 (defining clear sailing provisions).   Any class member is free to object

to Class Plaintiff's benchmark fee request.  Finally, no portion of the settlement funds will be transferred back to the Defendants.

In short, the settlement is fair, reasonable, adequate, and a product of arms'-length negotiations, lacks signs of collusion and lacks signs of any other deficiency.

## C. Each *Churchill* Factor Considered at This Stage Supports Preliminarily Approving the Settlement

In addition to assessing whether the settlement is collusive, courts in the Ninth Circuit assessing a proposed class action settlement weigh the various *Churchill* factors. These are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575).  Here, the last two factors are not applicable because a government participant is not present in this Action, and the Court cannot assess the reaction of the other class members to the proposed settlement until the Final Approval Hearing is held.  However, the remaining *Churchill* factors strongly weigh in favor of preliminary approval.

### 1. The strength of Plaintiff's case, risk of further litigation, and risk of maintaining class action status

Courts typically examine the first three *Churchill* factors together, and each supports preliminary approval of the settlement.  *See Betorina v. Randstad US, L.P.*, No. 15-cv-3646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017) (analyzing the first three *Churchill* factors together).  Although Class Plaintiff is confident in the strength of his case and believes he would ultimately prevail at trial, Class Plaintiff still recognizes that the risks inherent in further litigation are not insignificant.  This is a complex case that involves complicated assessments about the root cause of patient deaths in novel clinical trials that seek to treat patients with an incurable disease.  Documentary and expert evidence that the parties may present at trial will be similarly complex, and Class Plaintiff recognizes that evidence produced in discovery may be susceptible to different interpretations, including an interpretation favorable to Defendants' arguments regarding whether they made materially false and misleading

statements or acted with the requisite state of mind (scienter). In addition, the parties fiercely dispute the amount of damages and the method by which those damages are calculated. Class Plaintiff recognizes the risk that a fact finder may find in favor of Defendants on the amount of damages or the method by which those damages are calculated. *See Rinky Dink*, 2016 WL 4052588, at *5 (finding preliminary approval appropriate when considering the expense of the "additional depositions, expert work, and motion work [that] would have to be completed before trial").

Even if Class Plaintiff won on the merits at trial, Defendants' inevitable appeals would take years, and delay relief to the Class or eventually prevent any recovery. *See Rodriguez*, 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."); *Ikuseghan v. Multicare Health Sys.*, No. 14-cv-5539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay. The Settlement avoids these challenges[.]").

Hence, the strength of Class Plaintiff's case balanced against the risk and expense of litigation strongly weighs in favor of preliminary approval. *Rinky Dink*, 2016 WL 4052588, at *5 (finding first three *Churchill* factors supported preliminary approval when plaintiffs were confident in their case but continuing to litigate risked losing class certification and was "inherently expensive"); *Ikuseghan*, 2016 WL 3976569, at *4 ("Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years.").

### 2. Amount offered in settlement

The amount of the settlement also weighs in favor of preliminary approval. Courts typically weigh the relief obtained in the settlement against the possible relief that could be obtained at trial. *See, e.g. Ikuseghan*, 2016 WL 3976569, at *4 (comparing value obtained in TCPA settlement against possible recovery at trial). That being said, if the amount offered in settlement is small compared to the possible recovery at trial, that does not in and of itself mean the settlement should be rejected. *Officers for Justice*, 688 F.2d at 628 ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement . . . unfair").

The $11,900,000 proposed Settlement represents a significant percentage of the total damages that could be recovered at trial.  Plaintiffs' expert damages consultant employed multiple trading models used by economists to estimate aggregate damages, which calculated estimated losses here of up to $147 million.  The Settlement constitutes a recovery of slightly more than 8% of the maximum potential total damages, which is above the median percentage of investor losses recovered in securities class action settlements.[2]  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *8-*9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)).

For these reasons, the relief secured by this settlement warrants its approval.

### 3.    Extent of discovery completed and the stage of the proceedings

Next, the extent of discovery completed and the stage of the proceedings demonstrate that the parties "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement."  *Rinky Dink*, 2016 WL 4052588, at *5.  Defendants deposed the Class Plaintiff and his damages expert before the Court certified the Class.  Plaintiffs' Settlement Class is identical to the Class previously certified by the Court on May 8, 2018:

All persons or entities that purchased or otherwise acquired the common stock of Thoratec Corporation between May 11, 2011 and August 6, 2014, both dates inclusive.  Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Thoratec and any subsidiary thereof, members of their immediate families and their legal representatives, heirs successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

The claims certified for class treatment are identical to the claims to be released.

---

[2] *See* Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* (2017), at 7, *available at*: https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (finding median settlement amounts for the period of 2007 through 2016 ranged between 1.8 percent and 2.9 percent of estimated maximum damages).

In addition, Class Plaintiff served third parties subpoenas on the Interagency Registry for Mechanically Assisted Circulatory Support ("INTERMACS").  In response to Plaintiffs' requests for production of documents, Defendants and Third Parties together produced over 96,000 documents.

The parties also participated in a full day mediation after four years of litigation, and after the Court had already certified the Class.  The parties submitted multiple briefs, including documents produced by Defendants, to the mediator to more fully explain their positions and their views of the case.  It was only after mediation, and through additional submissions to the mediator and discussions between counsel and the mediator, that the settlement was reached.  Thus, the parties were fully informed about all significant issues, and capable of assessing the benefits of the proposed settlement. *See Ikuseghan*, 2016 WL 3976569, at *3 (approving settlement reached "between experienced attorneys who are familiar . . . with the legal and factual issues of this case in particular").  Thus, this factor supports preliminary approval.

### 4.    The experience and views of counsel

The final *Churchill* factor also demonstrates that the proposed settlement warrants preliminary approval.  Class Counsel have over 45 combined years of experience and expertise in litigating securities actions.  The Class Representative was consulted throughout the litigation, and had ample opportunity to assess the strengths of the claims in which to appraise the sufficiency of the settlement, which he approved.  *See e.g., Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.") (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ikuseghan*, , at *4 (considering that class counsel, "who are experienced and skilled in class action litigation, support the [s]ettlement as fair, reasonable, and adequate, and in the best interests of the [c]lass as a whole," and approving settlement).

It is Class Counsel's informed opinion that the Settlement represents a meaningful recovery given the risks of further litigation, and that preliminary approval should be granted to gauge the reaction of absent Class Members.  Indeed, each *Churchill* factor that can be considered warrants the settlement's preliminary approval, and, therefore, the Court should preliminarily approve the Settlement.

1

IV.    **THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED**

2

3       The proposed Plan of Allocation, which is detailed in the Notice to be mailed to Class Members,

4   will govern how the settlement proceeds will be distributed among Settlement Class Members who

5   timely file a Claim Form.  Courts in this Circuit typically approval a plan of allocation, so long as "the

6   proposed plan is rationally related to the relative strengths and weaknesses of the respective claims

7   asserted." *Rosenburg v. I.B.M*., No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11,

8   2007). *See also In re Oracle Sec. Litig*., No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun.

9   18, 1994) (reasonable to allocate more to class members with stronger claims).  The proposed plan of

10  allocation was prepared by Class Counsel in consultation with plaintiffs' damages expert, and rationally

11  reflects the damages related to the causes of action asserted in this case.  All Class members are treated

12  equally under the plan with each receiving no more, or less, than their *pro rata* share based on their

13  recognized losses. Accordingly, the Plan of Allocation will result in a fair and equitable distribution of

     the proceeds among Class members who submit valid claims.

14  V.    **THE PROPOSED CLASS NOTICE SHOULD BE APPROVED**

15

16      Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of a settlement be

17  "the best notice that is practicable under the circumstances, including individual notice to all members

18  who can be identified through reasonable effort."  *See also* Fed. R. Civ. P. 23(e)(1) ("The court must

19  direct notice in a reasonable manner to all class members who would be bound by the propos[ed

20  settlement]."). Moreover, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in

21  sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

22  heard.'" *Rodriguez*, 563 F.3d at 962 (citations omitted); *see also Sandoval v. Tharaldson Emp. Mgmt.,*

23  *Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010) ("The notice

24  must explain in easily understood language the nature of the action, definition of the class, class claims,

25  issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and

26  binding nature of a class judgment.").

27      Class Counsel seeks appointment of A.B. Data as the Settlement Administrator.  After review of

28  multiple bids from various settlement administrators, in Class Counsel's experience, A.B. Data will

provide adequate notice to the Class in the most cost-effective proficient manner. In accordance with the terms of the proposed Preliminary Approval Order, Class Counsel shall cause the Settlement Administrator to mail the Notice, in substantially the form as is appended as Exhibit A, as the Court shall order, and the Proof of Claim form, in substantially the form as is appended as Exhibit D hereto, as the Court shall order, to those members of the Class as may be identified through reasonable effort. Also, in accordance with the terms of the Preliminary Approval Order to be entered by the Court, Class Counsel shall cause the Settlement Administrator to publish the Publication Notice, in substantially the form appended as Exhibit C hereto, as the Court shall order.

The Settlement Administrator shall, among other duties and obligations, receive Proofs of Claim and determine whether they present valid clams in whole or part, work with Class Members as needed to help them supplement or clarify their Proofs of Claim, and determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation, or in such other plan of allocation as the Court approves).

Here, the form of the Notice is intended to be disseminated to all persons and entities who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified through Thoratec's transfer records and shareholder information.  In addition, the Claims Administrator will mail copies of the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities (*e.g.*, brokerages, banks, etc.).  The parties further propose to supplement the mailed Notice with the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") – an additional description of the action and proposed Settlement, to be published in the *USA Today*, a national newspaper.  Class Counsel will also make copies of the Notice and Proof of Claim available for download *via* the website created for the Settlement.  The address for the website is set forth in both the Notice and Summary Notice.  In addition to providing access to the Notice and Summary Notice, the website will provide copies of the operative complaint and other important pleadings, as well as important information regarding the action and the proposed Settlement.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class members that Class Counsel will apply to the Court for attorneys' fees in the amount of twenty-five (25%) of the total Settlement and for reimbursement of reasonable litigation expenses not to exceed $500,000, to be paid from the Settlement Fund. The Notice also notes the application for a Compensatory Award not to exceed $10,000 to the Class Plaintiff for the time spent consulting with Class Counsel throughout the litigation to date.

The proposed Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and Due Process. The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the Court-certified Settlement Class and who is excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Settlement Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the maximum amount Plaintiffs' Counsel will request for reimbursement of costs and expenses; and (10) the plan for allocating the Settlement proceeds to the Settlement Class.

Further, the proposed Notice discusses the rights Settlement Class members have in connection with the Settlement, including (1) the right to request exclusion from the Settlement Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator. The Notice also provides contact information for Class Counsel and counsel for Defendants, as well as the postal address for the Court.

Finally, the Claims Administrator, based on its experience, typically expect between 20 and 25 percent of the Class to file a claim in securities settlements. Below is a chart of a representative list of cases and the approximate claim percentage in each case

| Case Title | Settlement Amount | Notices Mailed | Claims Processed | Claim % |
|---|---|---|---|---|
| In re NII Holdings, Inc., Securities Litigation | $41,500,000 | 188,630 | 44,000 | 23.33% |
| In re SLM Corporation Securities Litigation | $35,000,000 | 159,770 | 41,830 | 26.18% |
| In re Lumber Liquidators Securities Litigation | $26,000,000 | 117,740 | 25,000 | 21.23% |
| In re Anadarko Petroleum Corp. Litigation | $12,500,000 | 382,710 | 95,810 | 25.03% |

As detailed above, the notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice more than satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, in granting preliminary approval of the Settlement, Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice to the Class.

**Proposed Schedule of Events**

Plaintiffs respectfully propose the following procedural schedule:

| | |
|---|---|
| Notice mailed to Class | 14 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published | 10 calendar days after the mailing of the Notice |

| | |
|---|---|
| Deadline for papers in support of settlement, fee and expense award, and compensatory award | 30 calendar days before the Final Approval Hearing |
| Objection Deadline | 14 calendar days prior to the Final Approval Hearing |
| Opt-Out Deadline | 14 calendar days prior to Final Approval Hearing |
| Deadline for response to objections and other reply papers in support of Settlement | 7 calendar days before the Final Approval Hearing |
| Deadline to file Proofs of Claims | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | To be determined by the court, approximately 100 days after entry of the Preliminarily Approval Order |

## VI.   CONCLUSION

Based on the foregoing, Class Plaintiff respectfully requests that the Court enter the Proposed Order Preliminarily approving partial settlement and providing for notice, which will: (i) preliminarily approve the partial Settlement; (ii) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (iv) set a Final Approval Hearing date and time to consider final approval of the partial Settlement and related matters and establish a schedule for various deadlines in connection with the Settlement.

Dated: February 1, 2019

Respectfully Submitted,

/s/ Leigh Handelman Smollar

*Class Counsel*

**POMERANTZ  LLP**
Patrick V. Dahlstrom
Leigh H. Smollar
Omar Jafri
10 South LaSalle Street, Suite 3500
Chicago, IL 60603
Tel:     (312) 377-1181

15

Fax:    (312) 229-8811
Email:  migross@pomlaw.com
lsmollar@pomlaw.com
ojafri@pomlaw.com

***Class Counsel***