**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh H. Smollar
10 South LaSalle Street
Suite 3500
Chicago, IL 60603

*Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

BRADLEY COOPER, Individually and on Behalf of All Others Similarly Situated,

v.

THORATEC CORPORATION, GERHARD F. BURBACH, TAYLOR C. HARRIS, and ROXANNE OULMAN

Defendants.

Case No. 4:14-cv-00360-CW

CLASS MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, ATTORNEYS' FEES AND EXPENSES, AND COMPENSATORY AWARD TO THE CLASS REPRESENTATIVE

Honorable Claudia Wilken

Date: Tuesday, June 25, 2019
Time: 2:30 p.m.
Courtroom: 6, 2nd Floor

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on March 12, 2019 ("Preliminary Approval Order"), on June 25, 2019, or as soon thereafter as counsel may be heard, at the United States Court, Northern District of California, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, before the Honorable Claudia Wilken, Class Representative Todd Labak ("The Class Representative" or "Labak") will move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, for an order certifying the Class, as defined herein, for settlement purposes only, granting final approval of the proposed settlement (the "Settlement"), and approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between The Class Representatives and Defendants.

This motion is supported by the accompanying Stipulation of Settlement, ECF 122-1; Memorandum of Points and Authorities in Support; the Declaration of Leigh H. Smollar in Support of The Class Representative's Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, Approval of the Plan of Allocation, and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, dated May 28, 2019 (the "Smollar Decl."), and the exhibits filed therewith; the Declaration of Eric Schachter Regarding Notice of Administration dated May, 2019 ("Schachter Decl."); Declaration of Todd Labak, dated May 24, 2019 ("Labak Decl."); the exhibits filed therewith; and all other pleadings and papers filed in this action.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Notice satisfied due process and the complied with Fed. R. Civ. P. 23(e);

2.  Whether the Plan of Allocation is fair, reasonable, and adequate;

3.  Whether the Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate after considering the factors in Fed. R. Civ. P. 23(e)(2) and additional factors for approval by the Ninth Circuit;

4.  Whether the request for attorneys' fees and reimbursement of expenses should be approved; and

5.  Whether a compensatory award should be approved for the Class Representative.

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................. i

TABLE OF AUTHORITIES ......................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

STATEMENT OF FACTS ............................................................................. 2

   A.  The Class Representative's Claims and Allegations ............................. 2

   B.  Procedural History and Lead Counsel's Investigation ........................ 3

   C.  Settlement Negotiations........................................................................ 5

   D.  Preliminary Approval and Notice......................................................... 5

ARGUMENT ............................................................................................... 6

   I.     STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS.................... 6

   II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................... 8

      A.  Rule 23(e)(2)(A): Zealous Representation ................................. 8

      B.  Rule 23(e)(2)(B): Arm's Length Negotiations ........................... 9

      C.  Rule 23(e)(2)(C): Benefits in Exchange for the Compromise of Strong Claims ......... 9

         1.  The Settlement Balances the Risks of Litigation and the Benefit to the Class of a Certain Recovery ........... 9

         2.  The Claim Process is Straightforward and Convenient........................................ 12

         3.  Class Counsel's Requested Attorneys' Fees and Costs Are Reasonable ............. 14

      D.  Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another .. 16

      E.  The Settlement Also Satisfies Additional Ninth Circuit Factors for Approval ......... 16

         1.  The $11.9 Million Settlement Fund Supports Approval ...................................... 17

         2.  The Extent of Discovery and the Stage of Proceedings ...................................... 19

         3.  The View of Experienced Class Counsel ........................................................... 20

         4.  The Reaction of the Class to the Proposed Settlement........................................ 20

   III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE .......... 21

   IV.   THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS .................. 22

1

V.       THE SETTLEMENT ADMINISTRATOR SELECTION PROCESS ............................ 23

CONCLUSION .................................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO THE CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL
Docket No. 4:14-cv-00360-CW

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281
(E.D. Cal. Dec. 18, 2012) ................................................................................ 20

*Betorina v. Randstad US, L.P.,* 2017 U.S. Dist. LEXIS 53317 (N.D. Cal. Apr. 6, 2017) ................. 17

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 9

*Buccellato v. AT&T Operations, Inc.*, No. 10-0463, 2011 WL 4526673 (N.D. Cal. Jun. 30, 2011) .. 16

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................... 8, 17

*Class Representative v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................... 21

*Cooper v. Thoratec Corp.*, et al., No. 4:14-cv-00360-CW .............................................. 3

*Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993) .......................................... 11

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................. 18

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ......................................... 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................ 23

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) .............................. 10, 20

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ............................................................... 7

*Glass v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476
(N.D. Cal. Jan.26, 2007) ............................................................................ 12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .................................................. 9, 12

*Gould v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 U.S. Dist. LEXIS 138921
(N.D. Cal. Sept. 26, 2013) ........................................................................... 9

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................ 8

*Hefler v. Wells Fargo & Co.,* Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292,
(2 N.D. Cal. Sept. 4, 2018) ......................................................................... 16

*Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) ............................................................................ 18

*Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976
(W.D. Wash. Mar. 21, 2001) ........................................................................... 8

*In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577
(C.D. Cal. Oct. 25, 2016) ........................................................................... 14

*In re Apple Computer Sec. Litig.*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608
(N.D. Cal. Sept. 6, 1991) ........................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................ 7, 9, 17

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*,
17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205 (N.D. Cal. May 3, 2019) .............................. 7, 8

*In re dj Orthopedics, Inc. Secs. Litig.*, No. 01-2238, 2004 U.S. Dist. LEXIS 11457
(S.D. Cal. Jun. 22, 2004) ....................................................................................................... 15

*In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555
(C.D. Cal. June 10, 2005) ................................................................................................... *passim*

*In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx), 2014 U.S. Dist. LEXIS 190313
(C.D. Cal. Sep. 15, 2014) ....................................................................................................... 14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................... 20

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................................... *passim*

*In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217
(S.D. Cal. Dec. 21, 1998) ...............................................................................................10, 11, 14

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................... 6, 18, 21

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................................................... 8, 20

*In re Skilled Healthcare Group, Inc.*, No. 09-5416, 2011 U.S. Dist. LEXIS 10139
(C.D. Cal. Jan. 26, 2011) .................................................................................................... 21, 22

*In re Synthroid Mktg. Litig*, 264 F.3d 712 (7th Cir. 2001) .............................................................. 19

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099 (S.D.N.Y. 1989) .......... 18

*In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815 (3d Cir. 2010) ................................... 16

*In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985)..................................... 20

*In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005)............. 16

*Ikuseghan v. Multicare Health Sys.*, No. 14-cv-5539-BHS, 2016 WL 3976569
(W.D. Wash. July 25, 2016) .................................................................................................... 20

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973).......................................................................... 9

*Lundell v. Dell, Inc.* Civil Action No. CO5-3970 JW/RS, 2006 U.S. Dist. LEXIS 90990
(N.D. Cal. Dec. 4, 2006)........................................................................................................ 10

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)  ................................................. 23

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)................. *passim*

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) ....................................................... 22

*Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435
(N.D. Cal. June 29, 2009) ....................................................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................... *passim*

*Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)........................................................... 22

*Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977) ........................................ 10

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ..................................... 12

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................... 20

*Rosales v. El Rancho Farms*, No. 1:09-CV-00707-AWI, 2015 U.S. Dist. LEXIS 95775
(E.D. Cal. July 21, 2015) ................................................................................................. 9

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ........................................... 22

*Todd v. STAAR Surgical Co.*, 2017 U.S. Dist. LEXIS 176183 (C.D. Cal. October 24, 2017) .... 14, 16

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS
162120 (N.D. Cal. Nov. 21, 2016) ................................................................................. 14

*Thornberry v. Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982) ...................................... 15

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................... 7, 8

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ...................................... 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 14

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ........................... 19

**<u>Other</u>**

15 U.S.C. § 78u-4(e) ..................................................................................................... 16

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements—
2016 Review and Analysis* (Cornerstone Research 2016) ........................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court previously certified a class in the above-captioned action ("Action") consisting of all persons or entities who purchased or acquired shares of the common stock of Thoratec Corporation ("Thoratec") between May, 11, 2011 through August 6, 2014, both dates inclusive, and who were damaged thereby  (*i.e.*, the "Class" and "Settlement Class Period"). The Stipulation (the "Settlement") provides for payment by the Defendants to the Class of $11,900,000 plus interest (the "Settlement Fund"). As described in greater detail below, A.B. Data, Ltd. (the "Settlement Administrator" or "A.B. Data") has published notice and disseminated approximately 59,986 copies of the Notice Of Proposed Settlement Of Class Action, Motion For Attorneys' Fees And Expenses, And Final Approval Hearing (the "Notice") and the Proof of Claim and Release Form ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet"). As of May 28, 2019, no objections to the Settlement, Plan of Allocation, attorneys' fees and expenses or a compensatory award to the Class Representative have been entered on the docket sheet or received by either Class Counsel or the Settlement Administrator. Moreover, to date, the Settlement Administrator has received only one request for exclusion from the Settlement by a potential Class member.[1]

The Class Representative submits that the Settlement of the Action on these terms represents an excellent result for the Class, and together with Class Counsel are pleased to present the Settlement to the Court. Class Counsel was able to obtain this result only after a thorough investigation of the facts and circumstances underlying the claims the Second Amended Complaint for Violations of Federal Securities Laws filed January 20, 2015 (the "SAC")(ECF No. 49), including analysis of public documents; interviews and examinations of confidential witnesses; consultation with a damages expert; the review of over 96,000 documents produced during discovery; depositions of both Plaintiffs and Defendants experts in connection with the Class Certification briefing; and mediation which included significant briefing both in preparation for and during the weeks following the conclusion of the in-person mediation session. Given the assessment of Class Counsel, after conducting their extensive factual and legal analysis of the relative strengths and weaknesses of the claims asserted in the Action

---

[1] The request for exclusion did not list the amount of shares purchased or dates of any purchase. Thus, there is no evidence that the person sending the exclusion is "actually" a member of the Class.

against the Defendants and the recovery of cash obtained for the Class without the delay usually experienced by class members in securities class actions, Class Counsel believes the Settlement is an excellent result. Prolonged litigation would have resulted in substantial reduction of available insurance proceeds, with no guarantee of any increased recovery. The Class would undoubtedly have been further delayed, and its recovery probably diminished, if the Settlement had not been entered into by all parties in February 2019.

Based on the amount obtained in Settlement versus the risk of obtaining a smaller or different judgment at trial, the certainty of a recovery versus the risks of no recovery at trial, the arm's-length negotiated Settlement arrived at through the assistance of an independent mediator, the equitable treatment of the Class Members in the Settlement, the efforts of the Class Representative and Class Counsel during the course of the litigation, Class Counsel's extensive experience in other class actions, the serious disputes between the parties concerning the facts, damages and liability, and the favorable reaction of the Class, Class Counsel firmly believes that this Settlement is fair, adequate, and reasonable, and recommend that the Settlement be approved by this Court.

## STATEMENT OF FACTS

### A.  The Class Representative's Claims and Allegations

The Action arises out of violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") based on allegations that Defendants made materially false and/or misleading statements during the Class Period concerning its product's, HeartMate II, rates of thrombosis and the effects on the Company's financials as a result of the disclosure of higher thrombosis rates by the New England Journal of Medicine. The Action was filed on behalf of all persons or entities that purchased or otherwise acquired the common stock of Thoratec between May 11, 2011 and August 6, 2014, both dates inclusive. The SAC alleges that Defendants misrepresented to the public that HeartMate II was safe, and that it consistently maintained its thrombosis rates at 2% to 3% and that Defendants at least recklessly disregarded that the thrombosis rates were significantly higher than represented by Defendants. The SAC alleges that when the truth concerning Thoratec's HeartMate II's thrombosis rates and its effects on the earnings and revenues of the company, shares of Thoratec's common stock declined significantly. According to the SAC, disclosure of higher rates caused a decline in Thoratec's stock price which

1   resulted in substantial damages to the Class.

2          Defendants expressly have denied and continue to vigorously deny all charges of wrongdoing or

3   liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that

4   could have been alleged, in the Action.  *See* Settlement, III. Defendants' Denials of Liability, ECF 125.

5   Defendants continue to assert that they did not violate Sections 10(b) or 20(a) of the Exchange Act, in

6   particular the elements of falsity, scienter and loss causation. Defendants assert that there were no

7   misrepresentations regarding thrombosis rates, and that a study released by the Interagency Registry for

8   Mechanically Assisted Circulatory Support ("INTERMACS") disclosed that thrombosis rates had

9   increased to 5% at least a month before the New England Journal of Medicine study disclosed that rates

10  had increased to over 8%. Accordingly, Defendants assert that the Class was unable to prove falsity or

11  scienter in support any of the allegations in the SAC. Defendants also have denied and continue to deny,

12  among other things, the allegations that the Class has suffered damages.  Without the Settlement,

13  Defendants would have continued to zealously defend against the claims alleged in the SAC.

14      **B.  Procedural History and Lead Counsel's Investigation**

15         On January 24, 2014, the action captioned *Cooper v. Thoratec Corp.*, et al., No. 4:14-cv-00360-

16  CW, was commenced with the filing of a complaint (ECF No. 1). Thereafter, pursuant to the Private

17  Securities Litigation Reform Act of 1995, (the "PSLRA"), on April 21, 2014, the Court entered an order

18  appointing Mr. Cooper as Lead Plaintiff and approved his selection of Pomerantz LLP ("Pomerantz") as

19  Lead Counsel, together with his selection of Glancy Prongay & Murray LLP (then known as Glancy

20  Binkow & Goldberg LLP) as Liaison Counsel. ECF No. 21.

21         On June 20, 2014, a Consolidated Class Action Complaint ("CAC") was filed which amended

22  the initial complaint. ECF No. 28. On August 19, 2014, Defendants moved to dismiss the CAC (ECF

23  No. 35) which the Court ultimately granted without prejudice pursuant to the Court's Order dated

24  November 26, 2014. ECF No. 42.

25         On January 20, 2015, the SAC was filed which amended the Class Period requiring an additional

26  named plaintiff, Todd Labak, to assist in representing the Class. ECF No. 49. Defendants moved to

27  dismiss the SAC on February 23, 2015 (ECF 51), which the Court granted with prejudice by Order dated

28  November 10, 2015. ECF No. 73.

On December 2, 2015, a Notice of Appeal with respect to the Court's dismissal of the SAC, ECF No. 75, and the parties fully briefed the appeal in the Ninth Circuit. Following full briefing and oral argument on October 4, 2017, the Ninth Circuit Court of Appeals reversed the District Court's dismissal of the Complaint and remanded the action for further proceedings. ECF 84. The Ninth Circuit's Mandate was issued on October 26, 2017. ECF 85.

Upon remand, the Class commenced document discovery and prepared their motion for class certification. The motion for class certification was filed on January 15, 2018, ECF No. 98, which proffered Labak as the class representative. As part of the class certification process, documents were produced to Defendants regarding Labak's purchase of Thoratec common stock, as well as a supporting expert report in support by Dr. Zachary Nye. *See* ECF 99-1. Labak and Dr. Nye were deposed, which were defended by Class Counsel. On March 29, 2018, Defendants filed their opposition to class certification. ECF No. 106. Prior to filing a Reply, Class Counsel subpoenaed documents from Defendants' expert, Professor Allen Ferrell, proffered in response to Dr. Nye's expert report, and took Prof. Ferrell's deposition on April 11, 2018 (ECF 112-1). On May 1, 2018, the Court heard oral argument, and issued an Order certifying the Class and appointing Labak as Class Representative on May 8, 2018. ECF 119.

Throughout this post-remand period, Class Counsel served document requests on Defendants and third-parties for the production of document.  In all, 96,000 document were produced during this period.  Defendants produced what they considered a set of key documents that supported their defenses, while they were still in negotiations with Class Counsel over search terms and other documents request. Part of the documents in discovery were subpoenaed from INTERMACS, part of the Society of Thoracic Surgeons national database the University of Alabama-Birmingham School of Medicine. INTERMACS collected data on thrombosis rates for HeartMate II, and produced the study upon which Defendants based their defense that a higher rate of thrombosis was disclosed to the market prior to the disclosures in the November edition of the New England Journal of Medicine.  As such, Class Counsel had invested much time and resources into discovery as they prepared for settlement negotiations.

**C.  Settlement Negotiations**

As noted above, the Settlement is the result of arms-length negotiations over a period of months. On June 5, 2018, the parties met for a full-day mediation session despite very strongly held, differing positions on the merits of the case and damages. The mediation was facilitated by Michelle Yoshida of Phillips ADR, an experienced mediator with extensive experience in class action securities settlements. Although unable to reach an agreement at the session in June, Ms. Yoshida continued to work with the parties over the next few months. The parties served upon each other additional mediation briefing and evidentiary proffers, and Ms. Yoshida proffered a mediator's recommendation. Regardless, the parties were still ultimately able to reach an agreement in principal until on or about August 29, 2018. While an agreement in principal was reached, the agreement was first memorialized in writing until the parties signed a Memorandum of Understanding on or about October 29, 2018.  After further negotiations, the Stipulation of Settlement was fully signed and entered on February 1, 2019. ECF 122-1.

**D. Preliminary Approval and Notice**

With the Stipulation of Settlement executed, the Class filed its motion for preliminary approval of the Settlement with the Court on February 1, 2019. ECF No. 122. On March 5, 2019, the Court held a hearing on the motion for preliminary approval and issued an order two days later enumerating certain additional information to be addressed in the motion for final approval of the Settlement and requiring edits to the Stipulation, the Summary Notice, the Notice, and the Proof of Claim. ECF No. 123. On March 9, 2019, Class Counsel filed documents in response to the Court's ordered changes. ECF No. 125. On March 11, 2019, Defendants filed the Court required declaration concerning compliance with the Class Action Fairness Act, U.S.C. §1715. ECF No. 127. Upon meeting these requirements, the Court entered the Preliminary Approval Order on March 12, 2019 that preliminarily found the Settlement to be the result of informed arm's-length negotiations, and that Settlement is fair, reasonable and adequate to warrant issuing notice to the Class.  ECF 128. The Court further: (i) approved the Stipulation and the Settlement set forth therein; (ii) required Class Counsel cause the Summary Notice to be published and the Notice Packets mailed to the identifiable Class members; and (iii) set deadlines for (a) objections to the Settlement, (b) requests for exclusion from the Class, and (c) filing papers in support of the Settlement, the Plan of Allocation, attorneys' fees and expenses, and compensatory award to the class representative. *Id.*

Pursuant to the Court's Preliminary Approval Order, Class Counsel has caused the Court-approved Settlement Administrator, A.B Data, to mail 59,986 Notice Packets to potential Class Members by first-class mail, postage prepaid. *See* Schachter Decl. ¶¶ 2-9.  Furthermore, since March 26, 2019, the Settlement Administrator has maintained a dedicated toll-free telephone number (1-866-905-8129) with interactive voice response ("IVR") and live operators to provide answers to questions about the Action and the Settlement.  Schachter Decl. ¶ 11. To date, the toll-free number has received 97 calls. *Id*. The Settlement Administrator also established and maintains a website dedicated to the Settlement, www.thorateclitigation.com, to assist potential Class Members. *Id*. at ¶ 12. The website is accessible 24 hours a day, 7 days a week and posts the Stipulation, Preliminary Approval Order, Notice, Proof of Claim and Summary Notice to the Settlement website. As of May 28, 2019, the website has received 22,601 hits.  *Id*. On April 5, 2019, the Settlement Administrator caused the Summary Notice of the Settlement to be published in *USA Today,* and disseminated over the internet on *PR Newswire*, a national business wire.  *Id.* at ¶ 10.

The last day to file objections to any aspect of the Settlement is June 11, 2019. Preliminary Approval Order at ¶ 10. As of May 28, 2018, there is no indication on the docket sheet that anyone has filed an objections, and neither Class Counsel nor the Settlement Administrator have received any objections. Schachter Decl. ¶ 13. Moreover, as noted above, the Settlement Administrator has only received one request for exclusion, or opt-out, from the Settlement.  *Id*.

## ARGUMENT

## I.   STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution . . . [and] is especially true in complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice*, 688 F.2d at 625). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). This ultimate decision is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). Therefore, in exercising its discretion, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625.

The amendments to the Federal Rules that became effective on December 1, 2018, Rule 23(e)(2) provide additional elements for courts to consider. The amendments, however, have not changed the standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate and reasonable. Rather, district court's ultimate determinations now will necessarily involve a consideration of the enumerated factors listed in Rule 23(e)(2). Moreover, courts in this District continue to apply the Ninth Circuit's factors for evaluating the fairness of a class action settlement which include, among others: the strength of case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *28 (N.D. Cal. May 3, 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011).[2] The Rule 23(e)(2) factors have significant overlap with the factors enumerated by the Ninth Circuit. *Compare id., with* Fed. R. Civ. P. 23(e)(2). As explained below, each of the factors support the final approval of the Settlement.

---

[2] These factors have been routinely cited by the Ninth Circuit as potential factors to consider in determining whether a proposed settlement is fundamentally fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 625; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi*, 8 F.3d at 1375.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

In preliminarily approving the Settlement, the Court carefully analyzed various factors identified by the Ninth Circuit as to whether the settlement is fair, reasonable, and adequate, and concluded that the "Settlement is sufficiently fair, adequate, and reasonable to warrant" preliminary approval. *See* Preliminary Approval Order. ECF 128. Nothing has changed since then, and as all applicable factors weighed by the Court during preliminary approval still support granting final approval, the Court should grant this motion. *See In re Chrysler-Dodge-Jeep,* 2019 U.S. Dist. LEXIS 75205, at * 29 (granting final approval of settlement upon finding that its conclusions as to the Rule 23(e)(2) and the Ninth Circuit factors that supported preliminary approval still "stand"). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arms'-length negotiations, including a mediation under Michelle Yoshida of Phillips ADR. *See Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval). It also is the considered judgment of experienced class counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21.

### A.  Rule 23(e)(2)(A): Zealous Representation

The Class Representative and Class Counsel have zealously prosecuted this action on behalf of the Class for over five years, and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. As detailed above, Class Counsel engaged in significant motion practice and discovery efforts to prosecute the Class claims including opposing two motions to dismiss and successfully appealing to the Ninth Circuit the dismissal of the Complaint with prejudice.  Upon remand, Class Counsel continued to prosecute the action through discovery and the successful certification of the Action as a Class Action. The Class Representative has also been actively engaged by having produced numerous documents, sat for a lengthy deposition, and having regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. *See* Labak Decl. ¶¶ 6-9.  The Class Representative was consulted on the terms of the Settlement, and has expressed his support and continued willingness to protect the Class. *Id.*  Accordingly, the Class has been, and remains, well represented.

**B.** <u>**Rule 23(e)(2)(B): Arm's-Length Negotiations**</u>

As noted above, the Settlement is the result of a series of good faith, informed, arm's-length and non-collusive negotiations mediated by Michelle Yoshida of Phillips ADR, perhaps the premier dispute resolution firm in the country, over a period of  weeks, with final terms and settlement documents negotiated over a matter of months. A settlement process, like here, facilitated by a mediator weighs heavily in favor of approval. *Rosales v. El Rancho Farms*, No. 1:09-CV-00707-AWI, 2015 U.S. Dist. LEXIS 95775, at*44 (E.D. Cal. July 21, 2015), *report and recommendation adopted*, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015) ("[T]he 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'") (quoting *In re Bluetooth*, 654 F.3d at 946 (9th Cir. 2011))); *Gould v. Rosetta Stone, Ltd*., No. C 11-01283 SBA, 2013 U.S. Dist. LEXIS 138921, at *16 (N.D. Cal. Sept. 26, 2013) (same). The procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting final approval.

**C.** <u>**Rule 23(e)(2)(C): Benefits in Exchange for the Compromise of Strong Claims**</u>

    **1.**    **The Settlement Balances the Risks of Litigation
And the Benefit to the Class of a Certain Recovery**

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 617. In other words, [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush. *Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell v. Dell, Inc.* Civil Action No. CO5-3970 JW/RS, 2006 U.S. Dist. LEXIS 90990, at *9-10 (N.D. Cal. Dec. 4, 2006). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

*Nat'l Rural.*, 221 F.R.D. at 526.[3]

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal. 1980) ("[a]s a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the Plaintiffs must be willing to moderate the measure of their demands.").

Defendants have and continue to expressly deny that they have violated the federal securities laws or have otherwise misled investors as alleged in the Action.  Thus, Class Counsel expected Defendants to raise all available defenses and to benefit from their counsel's zealous representation throughout each procedural step on the road to trial. Based on the arguments previewed by Defendants in their motions to dismiss and during the mediation process, Class Counsel had a comprehensive understanding of the strengths and weaknesses of the case and sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 45. The Class Representative and Class Counsel believe that the Settlement and its $11.9 million recovery is an excellent outcome given the risks and uncertainties inherent in litigating the case through trial.

At the time the agreement in principle to resolve the action was reached, formal discovery was already well underway. If not for this agreement, in a complex case like this one, the parties anticipated additional documents would be produced concerning information over a multiple-year period, as well as multiple party and non-party depositions. The completion of this factual discovery would have

---

[3] Accordingly, although Class Counsel believe that the case is meritorious, their experience has taught them how the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Heritage*, 2005 U.S. Dist. LEXIS 13555, at *25 (Settlement is favorable because "while Plaintiffs are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter."); *In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for Plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings").

undoubtedly taken many months to complete and likely would have run up to the May 2019 fact discovery deadline at great time and expense to the parties.

After the conclusion of fact discovery, the parties would have moved into the expert discovery process that was expected to take several additional months to complete and would have included exchange of reports, depositions, and *Daubert* challenges. In this Action, expert testimony would have been necessary in order to establish, *inter alia*, the amount – and, indeed, the existence – of actual damages. Such an expert evaluation is based not only on stock price history but on other more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. Therefore, regardless of a favorable finding on the issue of liability, significant additional risks would remain in establishing the existence of damages.

If the Action survived the motion for summary judgment stage, the parties would expend significant time and resources preparing this case for a lengthy and complicated trial that was set to commence March 23, 2020. As part of this preparation, the parties would then prepare a pre-trial order, propose jury instructions, and file and argue motions *in limine*. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *24. Although Class Counsel believes that the case is meritorious, in Class Counsel's experience the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Heritage*, 2005 U.S. Dist. LEXIS 13555 at *25 ("Settlement is favorable because "while The Class Representative are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter."); *In re Mfrs. Life Ins.*, 1998 U.S. Dist. LEXIS 23217, at *17 ("even if it is assumed that a successful outcome for plaintiff at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings"). Thus, Class Counsel is cognizant that despite having achieved many victories to reach trial, this by no means secures any benefit to the Class unless they can prove the Class's case to the jury on intricate and technical statistical issues and market principles.

Furthermore, even if the Class ultimately prevailed with the jury at trial, the Class would likely face the ongoing uncertainty and risks from a motion for judgment notwithstanding the verdict and an

appeal.  *See Glass v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *11-12

(N.D. Cal. Jan.26, 2007); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997)

(reversing on appeal an $81 million jury verdict and dismissing securities action with prejudice); *In re*

*Apple Computer Sec. Litig.*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)

(district court overturned jury verdict for damages exceeding $100 million). To put it simply, neither the

Class Representative nor Class Counsel had any guarantee that they would make it to trial, win at trial,

and win on appeal to secure a recovery for the Class.

Given the inherent risks of litigation as detailed above, courts have considered the immediacy

and certainty of a recovery as a factor to balance in determining whether the proposed Settlement is fair,

adequate, and reasonable. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case

has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*,

521 F.2d at 157. Thus, the Settlement confers substantial and immediate benefits to the Class as it not

only eliminates the risks that the Class would receiving nothing as a result of the litigation, it substantially

reduces the delay in a payment of the recovery. This factor strongly favors final approval. *See Nobles v.*

*MBNA Corp.*, No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. June 29, 2009) ("The

risks and certainty of recovery in continued litigation are factors for the Court to balance in determining

whether the Settlement is fair.") (citing *Mego*, 213 F.3d at 458). Accordingly, the Settlement results in

significant and immediate recovery, without any further risk, expense and delay that continued litigation

would entail and consideration of the risk, expense, complexity and likely duration of this Action

supports approval of the Settlement.

### 2.  The Claim Process is Straightforward and Convenient

The Settlement framework provides a simple and well-established methodology for the

processing of claims in a securities class action such as in this Action. First, the already approved Proof

of Claim form provides simple and specific instructions to potential Class members concerning the

necessary information they must present to the Settlement Administrator in order it to accurately process

their claim and the deadlines by which they must do such. Based on the information provided by the

Class members, the Settlement Administrator will confirm each Class member's eligibility to participate

in the recovery by mechanically calculating their respective "Recognized Loss" based on the Plan of

Allocation, and ultimately determine each Class member's *pro rata* portion of the Net Settlement Fund.[4] *See* Stipulation at ¶ 35 ("The Settlement Administrator shall determine and allocate to each Authorized Claimant that Authorized Claimant's proportionate share of the Settlement Fund based on each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants.").

Once the June 18, 2019 Claims deadline passes and any deficiencies are addressed by the Settlement Administrator, Class Counsel will submit to the Court a motion seeking a Settlement Fund Distribution Order that approves the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted, as well as authorizes and directs the distribution of the Net Settlement Funds to the Authorized Claimants. Once approved, the Settlement Administrator will have checks cut to Class Members for their *pro rata* share. *Id*. at ¶ 36.

After the initial distribution of the Net Settlement Fund, the Settlement Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund six (6) months after the initial distribution, if Class Counsel, in consultation with the Settlement Administrator, determines that it is cost-effective to do so, the Settlement Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement per the instructions of Class Counsel. *Id*. at ¶ 37. At such time as it is determined that the redistribution of the funds remaining in the Net Settlement Fund is not cost-effective, upon approval of the Court, the remaining balance shall be contributed the American Heart Association. *Id.*

The Claims processing procedure detailed above, in the Stipulation, and in the Notice is not a novel process. The Settlement Administrator, A.B. Data, is experienced in processing and administering claims in securities class actions based on similar claims. Thus, the Settlement's method for processing claims and distributing relief is fair and reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

---

[4] In the event that a Class Member's Proof of Claim is deficient in any regard or results in a determination that their transactions did not result in a "Recognized Loss," the Settlement Administrator will issue to these Class Members a letter detailing the deficiencies in the Proof of Claim and directing the Class Members as to how they may rectify these deficiencies or contest the Settlement Administrator's determination that their transactions did not result in an allowable claim.

### 3.  Class Counsel's Requested Attorneys' Fees and Costs Are Reasonable

Class Counsel's fee request is detailed separately in the motion for attorneys' fees and reimbursement of expenses filed concurrently herewith.  For its efforts and the risks of litigating the Action, Class Counsel is requesting that the Court award attorney's fees in the amount of $ 2,975,000.00, or 25% of the Settlement fund. This percentage has repeatedly been found in this jurisdiction to be fair and reasonable to the Class and especially so given the procedural posture and the work performed by Class Counsel to date. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048 (9th Cir. 2002); ); *Todd v. STAAR Surgical Co.*, 2017 U.S. Dist. LEXIS 176183, at *13 (C.D. Cal. October 24, 2017) (awarding 25% of $7 million settlement); *In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at * 24-25 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx), 2014 U.S. Dist. LEXIS 190313 (C.D. Cal. Sep. 15, 2014) (awarding  25% of $57 million settlement).   The fairness and reasonableness of the requested attorney's fees is further established by Class Counsel's and Liaison Counsel's lodestar of $2,414,469.50 based upon a total of 3,765.75 hours billed as of May 28, 2018. Class Counsel's requested attorney's fees and lodestar result in a modest multiplier of 1.23. Multipliers in excess of a 1.23 multiplier have repeatedly been found by courts in this District to be fair and reasonable to the Class under such lodestar cross-checks. For example, in *Vizcaino,* 290 F.3d at 1050 n4; 1051-1052 (Ninth Circuit affirmed a 28% fee award over objections that "the district court's lodestar cross-check . . . which resulted in a multiplier of 3.65.")  *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *26 (N.D. Cal. Nov. 21, 2016) (approving securities fraud settlement and awarding attorneys' fees with a multiplier of 2.54).

Class Counsel also is requesting the reimbursement of $392,445.81 in expenses that were incurred during the course of this litigation while vigorously representing the interests of the Class. Class Counsel and Liaison Counsel incurred these expenses with no guarantee that they would be reimbursed but incurred them such because they believed that these expenses were necessary and in the best interests of the Class. Expenses that Class Counsel are seeking reimbursement for include items such as damages and class certification experts' fees (the largest component), investigation fees, travel to and from Chicago to Oakland, San Francisco, Menlo Park, Boston and New York for hearings (in the district and

circuit courts), depositions and mediation, as well as discovery database fees and filing fees. *See, e.g.,* *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re dj Orthopedics, Inc. Secs. Litig.*, No. 01-2238, 2004 U.S. Dist. LEXIS 11457, *21 (S.D. Cal. Jun. 22, 2004) (holding that in addition to awarding fees of 25% of the gross fund, "[t]he request for reimbursement of expenses is supported by declarations and documentation and is not challenged by any party or plaintiff. This court finds the request to be reasonable and appropriate. Hence, the court GRANTS Class Counsel's request for reimbursement of expenses in the amount of $ 397,916.74.").

Moreover, Class Counsel believe a compensatory award of $10,000 for the Class Representative Todd Labak for his contributions to prosecuting the Action is warranted. Mr. Labak was committed to prosecuting the Action and overseeing the work of Class Counsel, and vigorously represented the interests of the class despite the expectation that he would only receive his *pro rata* portion of the Settlement in the event of recovery. As such, his efforts in this Action were largely driven by his belief in this Action and his commitment to achieving a recovery on behalf of all Class members given the alleged wrongdoing. Mr. Labak's efforts include, but were not limited to, taking time off from his work to prepare, fly to San Francisco from Chicago, Illinois, and sit for a deposition by Defendants' counsel. He produced documents, reviewed and commented on various filings, and worked with Class Counsel in the mediation and settlement of the Action. *See* Declaration of Class Representative Todd Labak in Support of Final Approval of the Settlement, Award of Attorneys' Fees and Expenses, and Class Representative's Compensatory Award, attached as Ex. 4 to Smollar Decl., filed herewith, at  ¶¶ 6-9.

In sum, the "terms of . . . [the] proposed award of attorneys' fees" are fair and reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Given the benefit conferred upon the Class and efforts undertaken in furtherance of the litigation, Class Counsel is respectfully requesting this award in line what other Courts in this District have granted to other class representatives for their considerable efforts in achieving a monetary benefit for the Class. *See, e.g., In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-0463, 2011 WL 4526673, *4 (N.D. Cal. Jun. 30, 2011) ($20,000 to lead plaintiff); *In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to lead plaintiffs

because of "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").  *See also STAAR*, 2017 U.S. Dist. LEXIS 176183, at *15 (awarding $10,000 to a lead plaintiff).

### D.  Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another

The proposed Settlement fairly and reasonably allocates benefits amongst the Class Members. All Class Members that meet the Class definition, were harmed as a result of the disclosure of alleged fraud, and that have a "Recognized Loss" under the Plan of Allocation will receive their "*pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's 'Recognized Loss.'" Notice, at 4. [5] Accordingly, each person or entity that submits a Proof of Claim will have their trade information scrutinized to assure that they are an Authorized Claimant consistent with the Class definition, followed by a calculation of their "Recognized Loss" pursuant to the Plan of Allocation. Thereafter, each Authorized Claimant will receive their *pro rata* share of the Net Settlement Fund unless their share is less than $20. *See id.* at 4-7. Accordingly, this equitability factor also supports granting final approval. *See, e.g.*, *Hefler v. Wells Fargo & Co.,* Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *38, 2 N.D. Cal. Sept. 4, 2018) ("the allocation plan disburses the Settlement Fund to class members 'on a pro rata basis based on the relative size of' the potential claims that they are compromising . . . This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable." (citing cases)).

### E.  The Settlement Also Satisfies Additional Ninth Circuit Factors for Approval

The Ninth Circuit has set forth the following list of factors that district courts should consider in determining whether a settlement should be approved as fair, reasonable, and adequate to the class:

> (1) the strength of the Class Representative's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of

---

[5] As further stated in the Notice, the Recognized Loss formula serves as the "basis on which the Net Settlement Fund will be proportionally allocated to Authorized Claimant's and was designed to take "into consideration the limitation on damages provision of the PSLRA, 15 U.S.C. § 78u-4(e), the advice of The Class Representatives' experts, and the principles of economic loss articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

1  the proposed settlement.

2  *In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575).

3  In the wake of the Rule 23(e)(2) amendment, many of the factors set as the standard for approval

4  of settlements by the Ninth Circuit have be subsumed into the amended rule and for the reasons already

5  discussed in detail *supra* in Sections II, A-D, support the approval of the Settlement. The remaining and

6  applicable factors not specifically discussed above in the required Rule 23(e)(2) evaluation, also weigh

7  in favor of approving the Settlement.[6]

8  ### 1.  The $11.9 Million Settlement Fund Supports Approval

9  "An important consideration in judging the reasonableness of a settlement is the strength of the

10  plaintiffs' case on the merits balanced against the amount offered in the settlement. However, in

11  balancing, a proposed settlement is not to be judged against a speculative measure of what might have

12  been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526. Balanced against all

13  of the risks outlined above, Class Counsel has recovered an $11,900,000 cash settlement plus interest

14  for the Class. The Class's damages' expert estimated potential recoverable damages for the Class could

15  be as high as $147 million. This figure was based on an estimate that approximately 34.7 million shares

16  of Thoratec common stock were damaged, *i.e.*, that 34.7 million shares were purchased during the class

17  period at inflated prices and then held during the corrective disclosures when the inflation was removed

18  from the market. The Settlement, therefore, represents more than 8% of the estimated total damages that

19  could have been recovered if the Class was completely successful on all issues of liability and damages

20  in the Action. While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

21  potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688

22  F.2d at 628,[7] the percentage recovery is within the range of settlements that have received approval by

23  the courts. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at

24

25  _____

26  [6] Factors (1) through (3) were addressed *supra* and are often analyzed together. *See Betorina v. Randstad US, L.P.*, 2017 U.S. Dist. LEXIS 53317, at *22-23 (N.D. Cal. Apr. 6, 2017). Here, factor (7) is not applicable because a government participant is not present in this Action.

27  [7] *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery").

28

*19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of plaintiffs' estimated damages). The 8% recovery is above the median percentage of investor losses recovered in securities class action settlements reported by litigation consulting firm Cornerstone Research. *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements—2016 Review and Analysis* (Cornerstone Research 2016) (showing that settlements as a percentage of estimated damages ranged between 1.8% and 2.9% between 2007 and 2016). *See also Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages).

Moreover, in securities actions, following the verdict on liability, the practice is for a Settlement Administrator to require each class member to file a claim and subject himself to potential attack on issues such as reliance, before the total amount of Defendants' actual liability is determined. Therefore, the $147 million figure arrived at by an expert not only assumes complete success on all issues of liability and damages, but also assumes that all members of the Class who can make a claim for payment will file claim. That, however, is almost never the case.

In addition, Class Counsel is cognizant of the fact that assuming success on all issues of liability and damages would be imprudent. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiffs' case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Thus, the arguable possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716-17 (7th Cir. 2001) (affirming settlement over objection that "the settlement should have been larger" where the plaintiff "would have had a headache trying to get any judgment on the merits"). If this Action was fully litigated, Class members might have received substantially less than the proposed Settlement, or, possibly, nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Class Counsel, as a fiduciary to a class, must always be mindful of that possibility in considering whether or not to accept a settlement, as should courts considering approval of settlement.

### 2.   The Extent of Discovery and the Stage of Proceedings

At the time the agreement in principal was reached in August 2018, the Action had been certified as a class action, document discovery was ongoing, and the parties were preparing for depositions. Prior to suspending discovery efforts upon the agreement in principle being reached, Class Counsel had reviewed a total of 96,000 pages of documents and were in negotiation with Defendants for a wider production. As noted above, part of the documents in discovery were subpoenaed from INTERMACS, which collected data on thrombosis rates for HeartMate II. The SAC alleged that Defendants closely monitored INTERMACS throughout the Class Period, and the Class needed to analyze the INTERMACS documents for, among other things, Defendants' scienter. *See* SAC ¶¶7, 85, 140, 165.

More importantly, Defendants alleged that Thoratec's common stock price did not drop when INTERMACS posted a study on its website on September 6, 2013, which noted an increase in thrombosis rates. This was a key argument in attacking the SAC and class certification.  Defendants undoubtedly would raise the issue again on summary judgment, and it would be an important defense at trial. Accordingly, the Class subpoenaed a large number of documents from INTERMACS, which required additional support from the Class's document database support to organize the raw data received from INTRMACS. The data ultimately was valuable to Class Counsel in addressing Defendants' arguments based on dissemination of the study on INTERMACS website during settlement negotiations.

As part of the mediation process, the parties submitted multiple briefs to the mediator, including documents produced by Defendants, to more fully explain their positions and their views of the case. Defendants produced a set of documents they believed established their defenses to the Class's claims following the parties failing to find any common ground at the mediation session.  It was only after mediation and through additional submissions to the mediator and discussions between counsel and the mediator that the settlement was reached. The decision to enter into the settlement, therefore, was based upon and benefitted from a significant amount of discovery. Thus, the parties were fully informed about all significant issues and capable of assessing the benefits of the proposed settlement. *See Ikuseghan v. Multicare Health Sys.,* No. 14-cv-5539-BHS, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) (approving settlement reached "between experienced attorneys who are familiar . . . with the legal and factual issues of this case in particular").

### 3.   The View of Experienced Class Counsel

The attorneys who prosecuted this action on behalf of the Class have over 45 combined years of experience and expertise in litigating securities actions.  Indeed, Pomerantz is the oldest frim in the United States specializing in plaintiffs' securities and derivative litigation. Here, highly experienced attorneys from Pomerantz, negotiating at arm's-length, have weighed the factors discussed above and endorse the Settlement.

"[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *Pacific Enters.*, 47 F.3d at 378). Accordingly, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc*., No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012)(quoting *Nat'l Rural*, 221 F.R.D. at 528); *see also Ellis*, 87 F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the settlement was reached." *Warner Commc'ns.*, 618 F. Supp. at 741. Here, the parties engaged in arms'-length negotiations, including an intensive mediation session, before Settlement was ultimately reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

This Action has been litigated and settled by experienced and competent counsel on both sides of the case. The law firm that represented the Class is well known for its experience and success in complex and class action litigation. That such qualified and well-informed counsel endorse the Settlement as being fair, reasonable and adequate to the Class heavily favors this Court's approval of the Settlement.

### 4.   The Reaction of the Class to the Proposed Settlement

As of May 28, 2019, the Settlement Administrator has sent 59,986 Notice Packets to potential Class members.  Schachter Decl. at ¶ 9. Additionally, on April 5, 2019, the Settlement Administrator published the Summary Notice in the national edition of *U.S. Today* and disseminated on the internet via *PR Newswire,* a national business wire.  As of May 28, 2019 only one potential class member has

requested exclusion from the Settlement. Schachter Decl. ¶ 13.  Neither the Settlement Administrator nor Class Counsel have received any objections to the Settlement, and there is no indication that any objections have been filed with the Court or entered on the record. The one request for exclusion did not enter any transactional information, thus it is not known whether the person requesting exclusion is a member of the Class or has a valid claim. The time period for objecting to the Settlement expires on June 11, 2019.  Preliminary Approval Order, ¶10.

It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a de minimus objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528. Class Counsel will file an updated affidavit, but the current absence of any objections by the Class supports final approval of the Settlement.

### III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiff v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech*., 559 F. Supp. 2d at 1045. "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *38. There is no requirement that a settlement must benefit all class members equally. *See Mego*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery). These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

The Plan of Allocation, here, was developed with the assistance of a consulting damages expert, and credits all Class members with the best possible result they could have achieved based on the number of Thoratec shares they purchased, their cost basis in those shares, and the timing of their purchases and sales of Thoratec common stock. Shaping each class member's recovery around these factors is only fair. *Skilled Healthcare,* 2011 U.S. Dist. LEXIS 10139 at *12.

The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases and sales of Thoratec securities on the open market. The Class Representative will receive a distribution from the Net Settlement Fund based on the same formulas that govern the recovery of every member of the Class.  There is no preferential treatment of any class member over any other member. *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334-35 (N.D. Cal. 2014). As such the Plan of Allocation is fair, reasonable and adequate.

### IV.   THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e)(1)(B) requires that notice be disseminated in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedures here sought to reach the greatest number of Class members possible. Pursuant to the Preliminary Approval Order, the Settlement Administrator disseminated 59,986 Notice Packets to potential Class members and nominees. Schachter Decl. at ¶ 9. In addition, the Settlement Administrator published the Summary Notice in the national edition of *U.S. Today* and on *PR Newswire* on April 5, 2019. Schachter Decl. ¶ 10.

On or about March 26, 2019, the Settlement Administrator established, and continues to maintain, a case-specific, toll-free telephone helpline, 1-866-905-8129, with an interactive voice response system and live operators, to accommodate potential Class Members with questions about the Action and the Settlement. The automated attendant answers the calls and presents callers with a series of choices to respond to basic questions. Callers requiring further help have had the option to be transferred to a live operator during business hours. As of May 22, 2019, A.B. Data has received 97 telephone calls. Schachter Decl. at ¶ 11.

On or about the same day, the Settlement Administrator established, and continues to maintain, a website dedicated to the Settlement, www.thoratoclitigation.com, to assist potential Class Members.

The website includes information regarding the Action and the proposed Settlement, including the exclusion, objection, and claim filing deadlines, and the date, time, and location of the Court's Settlement Hearing. Copies of the Notice, Claim Form, Settlement Stipulation, Preliminary Approval Order, and other documents related to the Action are posted on the website and are available for downloading. In addition, the website includes a link to a document with detailed instructions for institutions submitting their claims electronically. The website is accessible 24 hours a day, 7 days a week. As of May 22, 2019, the website has received 22,601 hits. Schachter Decl. ¶ 12.

The notice program described above is clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Class Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the Action; described Class members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, a toll-free telephone number and a website where Class members could obtain additional information. *See* Notice (ECF No. 125-1). The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. Accordingly, the notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

### V.    THE SETTLEMENT ADMINSTRATOR SELECTION PROCESS

In advance of seeking preliminary approval of the Settlement, Class Counsel sent a request for

proposal to three Settlement Administrator firms requesting bids. The bids included an estimate of the Class size by the bidders and amount of work to notify the Class and process the claims. Each bid itemized the work required as well as hard costs for items like printing, websites, toll-free telephone lines, etc. Class Counsel's reviewed the proposals and focused on the costs associated with the administration, as well as the timeliness and efficiency of the claims processing. Moreover, Class Counsel asked that each bid include a "hard cap" on costs, as Class Counsel was aware that a firm could make a low ball bid and seek payment on the back end.

Class Counsel chose A.B. Data based on the costs breakdown, their assurance of timely processing, and experience in the field.  A.B. Data was founded in 1981, and is a leading settlement administrator headquartered in Milwaukee, Wisconsin. Pomerantz has been involved in over twenty settlements in the past two years, and A.B. Data has been Settlement Administrator in four of those cases.

The method of notice and claims payment in a securities class action is uniform across securities class action claims settlements: Notice Packets are mailed to potential Class Members, Summary Notice is published in hard copy or disseminated over the internet; and checks are cut and sent to Authorized Claimants for their *pro rata* distribution of the Settlement Fund. The method of notice and claims payments will not be any different here.

The costs associated with the mailing and processing of claims varies based on the scale of efficiency that Settlement Administrators have developed.  A.B. Data has been in claims administration for many years and has the experience and workforce to address the issues faced in claims processing. Costs included in the claims processing for any settlement include, *inter alia*: Database setup, Website setup, Development and testing of online filing screens, Toll-free telephone line setup, Data capture and validation, Loading of electronic claims data, Audit and fraudulent flier review, Processing of Deficiency responses, Plan of Allocation Programming and testing, Distribution setup, Receipt and Process of undeliverable checks, Printing and mailing of notice packets, Printing and mailing of deficiency and ineligibility notifications, Printing and mailing of Bank/Broker/Nominees claim report, Printing and Mailing checks, PR Newswire Notice, Website Maintenance/Hosting, Interactive Voice Response, 800 Number Charges, Tax Reporting, Post Office Box Rental, and Document Imaging.

Here, the costs associated with this claims process are expected to be between $200,000 and

$250,000, which are paid out of the Settlement Fund.  That range is reasonable given what is already known about the claims processing. The Claims Processor has sent over 59,986 Notice Packets to potential Class Members. Each returned claim must be entered by hand into a database, reviewed for conformity to the Class definition, supporting documentation analyzed (with any follow-up letters as required), calculations of Recognized Loss and *pro rata* distribution; and ultimately a check cut and sent to the claimant.  Until the responses are in, there is no way to know what the total number of claimants will be, but in Class Counsel's experience, the amount is reasonable for distribution of an $11.9 million settlement, as the cost to claimants represents nor more than approximately 2% of the Settlement Fund.

<u>**CONCLUSION**</u>

For the reasons set forth above and in the supporting declarations, the Class Representative and Class Counsel request the Court grant Final Approval to the Settlement, Plan of Allocation, Request for Attorneys' fees and Reimbursement of Expenses, and Request for a Compensatory Award to the Class Representative.

Dated: May 28, 2019                                    Respectfully submitted,

<u>/s/ Leigh Handelman Smollar</u>

**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh H. Smollar
10 South LaSalle Street, Suite 3500
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 229-8811
E-mail: <u>pdahlstrom@pomlaw.com</u>
             lsmollar@pomlaw.com

Jeremy A. Lieberman
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Class Counsel***

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

***Liaison Counsel***