**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh H. Smollar
10 South LaSalle Street
Suite 3500
Chicago, IL 60603

*Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| BRADLEY COOPER, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:14-cv-00360-CW |
| Plaintiffs, | **CLASS MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND COMPENSATORY AWARD TO THE CLASS REPRESENTATIVE** |
| -against- | |
| THORATEC CORPORATION, GERHARD F. BURBACH, TAYLOR C. HARRIS, and DAVID V. SMITH, | Honorable Claudia Wilken |
| Defendants. | Date: Tuesday, June 25, 2019<br>Time: 2:30 p.m.<br>Courtroom: 6, 2nd Floor |

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

    I.    AWARDING ATTORNEYS' FEES ..................................................................... 2

        A.  The Guiding Principle For Fee Awards ................................................... 2

        B.  The Percentage-of-the-Fund Approach .................................................... 2

        C.  The Ninth Circuit Benchmark Award is 25% .......................................... 3

    II.   THE 25% BENCHMARK AWARD IS REASONABLE HERE .......................... 4

        A.  The Reasonableness Factors ..................................................................... 4

        B.  Class Counsel Achieved an Excellent Result for the Class ..................... 4

        C.  The Risks of Further Litigation ................................................................ 5

        D.  Skill Required, the Quality and Efficiency of Counsel's Work ............... 6

        E.  The Contingent Nature of the Case and Financial Burden Carried by Class Counsel ....................................................................................................... 7

        F.  The Customary Fee .................................................................................. 7

        G.  Lodestar Cross-Check Confirms Reasonableness of Fee Request .......... 8

        H.  The Reaction of the Class Supports the Fee Award ............................... 9

    III.  CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY 9

    IV.  THE COMPENSATORY AWARD SHOULD BE APPROVED ........................ 11

CONCLUSION ................................................................................................................ 12

## **TABLE OF AUTHORITIES**

*Blum v. Stenson*, 465 U.S. 886 (1984) .............................................................................. 7

*Buccellato v. AT&T Operations, Inc.*, No. 10-0463, 2011 WL 4526673
(N.D. Cal. Jun. 30, 2011) ................................................................................................ 11

*Destefano v. Zynga, Inc.*, No. 12-4007, 2016 U.S. Dist. LEXIS 17196
(N.D. Cal. Feb. 11, 2016) ............................................................................................ 6, 10

*Fischel v. Equitable Life Assur.*, 307 F.3d 997 (9th Cir. 2002) .................................................. 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................ 5

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................................... 3

*In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577
(C.D. Cal. Oct. 25, 2016) ................................................................................................. 8

*In re Ashanti Goldfields Sec. Litig.*, No. 00-717, 2005 U.S. Dist. LEXIS 28431
(E.D.N.Y. Nov. 15, 2005) ................................................................................................ 10

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) ..................................................... 3

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ............................................................ 3

*In re dj Orthopedics, Inc. Secs. Litig.*, No. 01-2238, 2004 U.S. Dist. LEXIS 11457
(S.D. Cal. Jun. 22, 2004) ................................................................................................ 11

*In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13627
(C.D. Cal. Jun. 10, 2005) ................................................................................................. 9

*In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx),
2014 U.S. Dist. LEXIS 190313 (C.D. Cal. Sep. 15, 2014) ................................................. 8

*In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E, 1990 U.S. Dist. LEXIS 15488
(S.D. Cal. 1990) ............................................................................................................... 7

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................. 6

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .................................. 4

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160
(S.D.N.Y. 1989) ................................................................................................................ 3

*In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815 (3d Cir. 2010) ........................ 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............... 2, 5, 7

*In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) .. 11

*Kerr v. Screen Actors Guild*, 526 F.2d 67 (9th Cir. 1975) ........................................................ 4

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ....................................................................... 3

*Morris v. Lifescan, Inc.*, 54 Fed. App. 663 (9th Cir. 2003) ........................................................ 4

*Norris v. Mazzola*, No. 15-4962, 2017 U.S. Dist. LEXIS 208610 (N.D. Cal. Dec. 19, 2017)..6

*Patel v. Axesstel, Inc.*, No. 14-1037, 2015 U.S. Dist. LEXIS 146949
(S.D. Cal. Oct. 23, 2015) .................................................................................................. 3

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................. 2

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ....................................................................4

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist.
LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ..................................................................... 8, 9

*Thornberry v. Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982)............................................... 11

*Todd v. STAAR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183
(C.D. Cal. Oct. 24, 2017) ........................................................................................ 4, 8, 11

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................................... 2, 3

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................... 4, 8, 9

**<u>Other</u>**

15 U.S.C. § 78u-4 ..............................................................................................................3, 11

Richard Posner, *Economic Analysis of Law*, §21.9 (3d ed.1986) ............................................ 7

Class Representative Todd Labak by and through Class Counsel, hereby moves for an order:

(1) awarding attorneys' fees of 25% of the Gross Settlement Fund;

(2) granting reimbursement of litigation expenses; and

(3) awarding the Class Representative a compensatory award of $10,000.

## INTRODUCTION

Class Counsel achieved a $11.9 million cash settlement against Defendants Thoratec Corporation, Gerhard F. Burbach, Taylor C. Harris, and David V. Smith. Class Counsel requests that the Court award them 25% of the gross settlement fund, consistent with the Ninth Circuit benchmark.

By any measure, the Settlement is a good result for the Class, avoiding the considerable risks of summary judgment, trial, and appeal. The Settlement amount represents more than 8% of the estimate of likely recoverable damages from Defendants, above the average for securities fraud class actions.

The reaction of the Class strongly supports the requested fees and expenses. The deadline to file objections and to request exclusion to the Settlement is June 11, 2019, more than a week after the filing of this motion. To date, in response to the Notice of Pendency, the Notice of Proposed Settlement, the Settlement Administrator has not received any objections to the requested fees and expenses, or Plaintiffs' reimbursement award. The Settlement Administrator has not received any objection to the Settlement, and only one request to be excluded from the Settlement. *See* Declaration of Eric Schachter Regarding Notice Administration ("Schechter Decl."), at ¶ 13, (attached as Ex 1 to Smollar Declaration, filed herewith).

Pursuant to the Preliminary Approval Order, the Settlement Administrator mailed a total of 59,986 notice forms to Class Members. *See* Schachter Decl. ¶ 9. The Notice expressly informed Class Members that Class Counsel intended to apply for an award of attorneys' fees of up to 25% of the Gross Settlement Fund and an award to the Class Representative not to exceed $10,000, and

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS

1

that Class Counsel would seek reimbursement of their out-of-pocket expenses not to exceed $500,000. To date, the Class appears satisfied with those requests.

A lodestar cross-check further confirms the fairness and reasonableness of Class Counsel's fee request. Class Counsel and Liaison Counsel spent a total of approximately 3,765.75 hours of professional time having a market value of approximately $2,414,469.50 in prosecuting the claims in this litigation. *See* Smollar Decl. ¶ 66. The requested 25% award will result in a lodestar multiplier of approximately 1.23, which is on the low end of the range of reasonable multipliers that courts in the Ninth Circuit routinely award.

In addition, the litigation expenses for which Class Counsel requests reimbursement, $392,445.81 are reasonable and relate to expenses routinely reimbursed. The requested compensatory award to the Class Representative is reasonable given the considerable service provided to the Class. For these reasons, and as further set forth below, the Class Representative and Class Counsel respectfully submit that the Court award attorneys' fees of 25% of the settlement fund, reimbursement of counsel's litigation expenses, and the compensatory award of $10,000 are reasonable and should be approved.

## I.   AWARDING ATTORNEYS' FEES

### A.   The Guiding Principle For Fee Awards

A "lawyer who creates a common fund" is entitled to fees from "those upon whom he has conferred a benefit." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The guiding principle for determining the amount of a fee award in a common-fund case is that the fee should be "reasonable under the circumstances." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("WPPSS") (citation omitted).

### B.   The Percentage-of-the-Fund Approach

The Ninth Circuit expressly approves the use of the percentage-of-the-fund method for awarding fees in common fund cases. *Paul, Johnson*, 886 F.2d 268; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). District courts in this Circuit have almost uniformly shifted to the percentage-of-the-fund method in awarding fees in class actions for the following reasons:

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
2

First, the percentage-of-the-fund method is consistent with practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

Second, the percentage-of-the-fund method more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances. *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . reward[ing] exceptional success . . . [and] penaliz[ing] failure").

Third, the percentage-of-the-fund method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79; *see also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

Fourth, the percentage-of-the-fund approach is consistent with the plain text of the Private Securities Litigation Act of 1995 ("PSLRA"), which provides that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6); s*ee also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C. The Ninth Circuit Benchmark Award is 25%

In the Ninth Circuit, "25% of the common fund [is] the 'benchmark' award for attorney fees," *Torrisi*, 8 F.3d at 1376, although some district courts in the Ninth Circuit have award percentages even higher than the 25% benchmark. S*ee, e.g., Patel v. Axesstel, Inc.*, No. 14-1037, 2015 U.S. Dist. LEXIS 146949, *21 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities-fraud class action based on "the complexity of securities litigation, the lodestar crosscheck, and the lack of any objection from the class members."*.; Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003) (affirming 33% fee).

Here, Class Counsel requests no enhancement to the Ninth Circuit's benchmark. The fee request is squarely within the range of percentages courts in this Circuit award in similar securities-fraud class action settlements, and highly reasonable given the favorable result achieved for the Class.

## II. THE 25% BENCHMARK AWARD IS REASONABLE HERE

### A. The Reasonableness Factors

Courts consider some or all of the following non-exclusive list of factors in determining a "reasonable" percentage to award as a percentage of the fund:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1047-50 (9th Cir. 2002). *Accord, Kerr v. Screen Actors Guild*, 526 F.2d 67, 70 (9th Cir. 1975). These factors applied to the case at bar demonstrate that a fee award of 25% of the gross fund is reasonable.[1]

---

[1] The 25% rate should be applied to the gross settlement fund rather than net of expenses. In upholding the application in this manner, the Ninth Circuit noted that the reasonableness of a fee request is based upon the resulting figure, not the denominator. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). "If twenty-five percent of gross is reasonable, perhaps thirty-five percent of

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS

4

### B. Class Counsel Achieved an Excellent Result for the Class

Courts consistently recognize that the result achieved is perhaps the major factor in making a fee award. *E.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"). Here, the payment of $11.9 million in cash to the Class provides an excellent recovery under the circumstances. Class Counsel, after consulting with experts, estimates that the $11.9 million Settlement represents more than 8% of maximum potential damages if the Class achieved a highly favorable outcome at trial and on appeal, and above the average securities settlement. Therefore, the Settlement represents a highly favorable recovery for the Class which supports granting the fee request.

The Settlement achieved here is several times the median percentage recovered in securities class action settlements based on data compiled by various securities litigation watchdogs. According to an analysis by Stanford University and Cornerstone Research, a defendant-oriented economic consultancy, the annual median securities class action settlement for each year between 2007 and 2016 ranged between 1.8% and 2.8% of estimated damages. *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements—2016 Review and Analysis* (Cornerstone Research 2016).[2] The Settlement here is more than 8% of maximum damages if the Class was successful on liability for each of the alleged false statements, loss causation for each alleged disclosure or materialization of risk, and the consulting expert's calculation of damages. The result, therefore, would achieve an excellent result compared to the Stanford and Cornerstone median results.

### C. The Risks of Further Litigation

Courts recognize that the risk of litigation is an important factor in determining a fee

---

net would be reasonable." *Id.*; *see also Todd v. STAAR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *24-25 (C.D. Cal. Oct. 24, 2017) (awarding attorneys' fees and expenses to be paid from the gross settlement fund) (J., Fitzgerald). Additionally, Class Notice indicated that the fees would be requested as a percentage of the gross settlement fund.

[2]  *See also* http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf.

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
5

award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300. The Class Representative and Counsel Counsel believe their case is strong and that they would ultimately prevail. They recognize, however, that there are considerable risks that, at trial, Plaintiffs would face additional significant risks to both liability and damages. A jury might easily find that Defendants did not commit fraud or bore no responsibility for the alleged wrongdoing. Moreover, a jury could accept Defendants calculation of damages, which is materially less than the Class's calculation, or simply find that damages are lower than the Class's calculation.

Plaintiffs also recognize that evidence produced in discovery may be susceptible to different interpretations. This is especially the case with Defendants' claim that the INTERMACS study posted on September 6, 2013 on the website for the database at the University of Alabama-Birmingham School of Medicine would have alerted the market to higher thrombosis rates before the New England Journal of Medicine article on November 26, 2013. Indeed, the jury might not agree with Plaintiffs that the evidence demonstrated that Defendants made materially false and misleading statements, acted with the requisite state of mind (*scienter*), or caused Plaintiffs' losses. Plaintiffs would also face trial challenges concerning proof of control and damages. And, even if successful at trial, Plaintiffs would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal.

Given the various risks in this Action, especially Defendants' claim that material information, and the strengths and weaknesses of the claims asserted against Defendants, the $11.9 million Settlement is highly favorable and in the best interests of the Class.

### D.  Skill Required, the Quality and Efficiency of Counsel's Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007). "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, No. 12-4007, 2016 U.S. Dist. LEXIS 17196, *59 (N.D. Cal. Feb. 11, 2016) (citing *Omnivision*). The quality of Class Counsel's work on this case is reflected in the excellent result

obtained. *See Norris v. Mazzola*, No. 15-4962, 2017 U.S. Dist. LEXIS 208610, *39 (N.D. Cal. Dec. 19, 2017) ("that Class Counsel have significant experience in this field … further indicates that the fee request is reasonable"). Indeed, here, Class Counsel litigated to the Ninth Circuit and received a favorable ruling to continue the action after initially being dismissed.

Class Counsel have extensive, significant, and highly focused experience in the field of securities class action litigation. Indeed, Pomerantz is the oldest firm in the United States specializing in plaintiffs' securities and derivative litigation. The Pomerantz attorneys who prosecuted this action on behalf of the Class have over 45 combined years of experience and expertise in litigating securities actions. "The quality of opposing counsel is also relevant to the quality and skill that class counsel provided …" *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, *59. Plaintiffs were opposed in this litigation by the nationally respected firm of Latham and Watkins LLP, which mounted a skillful and aggressive defense by attorneys with extensive experience in securities litigation.

At every stage of the proceedings, Class Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Class Counsel successfully investigated the claims against Defendants, drafted amended complaints that survived motions to dismiss, succeeded on appeal to the Ninth Circuit, conducted effective discovery, obtained class certification, and settled the claims in this Action on an excellent basis for the Class. Such quality, efficiency, and dedication should be rewarded.

### E. The Contingent Nature of the Case and Financial Burden Carried by Class Counsel

Courts recognize that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.

*See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986). Contingent fees in risky cases that may exceed the market value of the services if rendered on a non-contingent

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
7

basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Here, Class Counsel has not received any compensation over the course of the litigation against Defendants and have incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. Moreover, Class Counsel have carried the financial burden here for more than five years, and is seeking a fee with a modest 1.23 multiplier of their lodestar, which further supports a finding that the fee request is fair.

### F.     The Customary Fee

If this were not a class action, the customary contingent fee arrangement would be in the range of 30% to 40% of the recovery. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 n."*" (1984) (concurrence) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E, 1990 U.S. Dist. LEXIS 15488, *22 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."). That the 25% fee requested in this case is lower than the contingent fee arrangements between lawyers and clients customary in the private marketplace confirms that Class Counsel's request is reasonable.

The 25% fee requested is also within the range of fees awarded by the courts in the Ninth Circuit in securities fraud class actions. *See, e.g., Vizcaino,* 290 F.3d at 1051-52 (affirming award of 28% of $97 million settlement); *STAAR Surgical Co.*, 2017 U.S. Dist. LEXIS 176183, at *13 (awarding 25% of $7 million settlement); *In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at * 24-25 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx), 2014 U.S. Dist. LEXIS 190313 (C.D. Cal. Sep. 15, 2014) (awarding 25% of $57 million settlement).

Accordingly, a fee award of 25% of the Settlement Fund here is fair and reasonable.

### G. Lodestar Cross-Check Confirms Reasonableness of Fee Request

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050.

Here, a 25% fee award would result in a reasonable 1.23 multiplier of the counsel's lodestar. The total lodestar for Class Counsel and Liaison Counsel's work in this Action is $2,414,469.50 based on 3,765.75 hours. Counsel's fee request of 25% of the gross settlement fund would be $2,975,000, or approximately 1.23 times the lodestar.

Courts in this Circuit have routinely found that significantly higher multipliers are well within the acceptable range. For example, in *Vizcaino,* 290 F.3d at 1051-52 the Ninth Circuit affirmed a 28% fee award over objections that "the district court's lodestar cross-check . . . which resulted in a multiplier of 3.65." *Id.* The Ninth Circuit listed twenty-three shareholder settlements in which the average multiplier was 3.28. *Id.* at 1050 n.4; *see also Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *26 (N.D. Cal. Nov. 21, 2016) (approving securities fraud settlement and awarding attorneys' fees with a multiplier of 2.54). Here, the multiplier is far lower than those found reasonable in *Vizcaino* and *MagnaChip*. Accordingly, the lodestar check supports the request here.

### H. The Reaction of the Class Supports the Fee Award

The Settlement Administrator mailed 59,986 copies of the Court-approved Notice to Class Members. *See* Schachter Decl., ¶ 9. The Notice was also published *via U.S.A. Today* and *via PR Newswire* on April 5, 2019. It was further made available the public on the Settlement Administrator's website. *Id.* at ¶ 10. Class Members were informed in the Notice that Class Counsel would apply for attorneys' fees of up to 25% of the gross settlement fund and were

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
9

advised of their right to object to Class Counsel's fee request. *See* ECF No. 125-1.

To date, there have been no objections and only one request to be excluded from the Settlement in response to the Notice of the Settlement. In addition, neither the Settlement Administrator nor Class Counsel has received any objections to the fee request, reimbursement of expenses, or the reimbursement award to Plaintiffs. Moreover, there is no indication on the court's docket sheet that any Class Member has filed any objections to any aspect of the Settlement, including the attorneys' fee request, reimbursement of expenses, or the compensatory award to the Class Representative.

Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13627, *48-50 (C.D. Cal. Jun. 10, 2005) ("conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,] particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice.").

Here, the absence of any objections by any Class Member supports granting the fee request, reimbursement of expenses, and the compensatory award to the Class Representative.

### III.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY

Class Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve the $11.9 million gross recovery for the Class.  Class Counsel has incurred litigation expenses of $392,744.61, for which they have not been reimbursed to date. *See* Smollar Decl. ¶ 67.

The amount requested is over $100,000 less than that identified in the Notice, which apprised the Class Members that Class Counsel would seek expenses in an amount not to exceed $500,000.  To date, there is no indication than any Class Member has filed an objection to Class Counsel's request for reimbursement of expenses with the Court, the Settlement Administrator or Class Counsel. *See* ECF *and* Schachter Decl. ¶ 13.

Consistent with other jurisdictions, "courts throughout the Ninth Circuit regularly award

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
10

litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Zynga*, 2016 U.S. Dist. LEXIS 17196, *73.  Class Counsel has pursued this litigation knowing that its outstanding expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement.  Class Counsel has had no incentive to incur – and did not incur – unnecessary expenses, having carried the financial burden of these expenses for over five years.

The expenses for which Plaintiffs' counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Class, and are of the type routinely charged to paying clients. Indeed, the expenses included filing an appeal with the Ninth Circuit as well as extensive discovery. Accordingly, these expenses should be reimbursed out of the common fund.

The largest expense was for experts retained to address significant matters in this litigation. The Class's experts supporting market efficiency analyses, damages analyses, loss causation analyses, assisting with the plan of allocation, and database and discovery analyses represent $304,994.05 of the total expenses.  Moreover, Class Counsel prepared the experts for deposition, defended the deposition in Menlo Park, and also deposed Defendant's market efficiency expert in Boston. These expert expenses are consistent with those reimbursed in other similarly complex securities fraud litigations that have progressed to discovery.  *See, e.g., In re Ashanti Goldfields Sec. Litig.*, No. 00-717, 2005 U.S. Dist. LEXIS 28431, *15-16 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses. . . . This is not unusual in securities litigation actions.").

Reimbursement is also proper with respect to the other requested expenses.  Air travel, lodging and costs incidental to travel such as meals, taxis and parking, are routinely reimbursed. *See, e.g., Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re dj Orthopedics, Inc. Secs. Litig.*, No. 01-2238, 2004 U.S. Dist.

LEXIS 11457, *21 (S.D. Cal. Jun. 22, 2004) (In addition to awarding fees of 25% of the gross fund, "[t]he request for reimbursement of expenses is supported by declarations and documentation and is not challenged by any party or plaintiff. This court finds the request to be reasonable and appropriate. Hence, the court GRANTS Class Counsel's request for reimbursement of expenses in the amount of $ 397,916.74."). Here, multiple trips were made between Chicago and Oakland, San Francisco, Menlo Park, Boston and New York by counsel and the Class Representative for depositions and hearings before this Court, as well as before the Ninth Circuit. All were reasonable and necessary to prosecute the claims of the Class and should be approved.

## IV. THE COMPENSATORY AWARD SHOULD BE APPROVED

The Class Representative and Class Counsel also request that the Court award the Class Representative $10,000 to compensate him for the significant time expended in representing the Class and assisting Class Counsel in the prosecution of claims against Defendants. *See* 15 U.S.C. §78u-4(a)(4). The amount is justified here because of the substantial efforts and benefit that the Class Representative conferred upon the Class. As an initial matter, the Class Representative was diligent in assuring that Class Counsel limit the fee request to no more than the 25% benchmark to maximize the distribution to the Class. Moreover, he met with counsel to prepare for a deposition and traveled from Chicago to San Francisco to sit for a deposition, produced documents in response to Defendants' discovery requests, communicated with Class Counsel about the Action and reviewed the settlement proposal with Class Counsel. *See* Declaration of Class Representative Todd Labak in Support of Final Approval of the Settlement, Award of Attorneys' Fees and Expenses, and Class Representative's Compensatory Award attached as Ex. 4 to Smollar Decl., filed herewith, at ¶¶ 6-9. Indeed, the Class Representative spent over 100 hours assisting Class Counsel on behalf of the Class, including taking time from his employment to prepare and travel to San Francisco for his deposition. *Id.*

Furthermore, courts often reward more than what is being requested here. *See, e.g., In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-0463, 2011 WL 4526673, *4 (N.D. Cal.

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
12

Jun. 30, 2011) ($20,000 to lead plaintiff); *In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to lead plaintiffs because of "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"). *See also STAAR*, 2017 U.S. Dist. LEXIS 176183, at *15 (awarding $10,000 to a lead plaintiff).

Accordingly, a compensatory award of $10,000 to the Class Representative is appropriate.

## **CONCLUSION**

Securities class actions are complex and laden with risk. Many times class counsel, after expending thousands of hours of time and hundreds of thousands of dollars of expenses, receive no compensation whatsoever. Here, there was no guarantee that the Class's claims against Defendants would bear any fruit.

This complex litigation has been extremely hard-fought, including briefing and argument to the Ninth Circuit, with Defendants represented by experienced and equally determined counsel. Without any assurance of success, the Class Representative and Class Counsel pursued their claims for over five years to an exceptional conclusion. This Settlement represents an excellent recovery for the Class and reflects the skill, dedication, and tenacity of Class Counsel.

Accordingly, Class Counsel respectfully request that the Court approve the request for attorneys' fees in the amount of $2,975,000.00, expenses in the amount of $392,445.81, and a compensatory award of $10,000 to Class Representative Todd Labak.

Dated: May 28, 2019

Respectfully Submitted,

/s/ Leigh Handelman Smollar
**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh H. Smollar
10 South LaSalle Street, Suite 3500
Chicago, IL 60603
Tel:   (312) 377-1181
Fax:   (312) 229-8811

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
13

Email:  pdahlstrom@pomlaw.com
 lsmollar@pomlaw.com

Jeremy A. Lieberman
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com

*Class Counsel*

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Liaison Counsel*

MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS
14

**Certificate of Service**

I certify that, on the date stamped above, I caused this document and its accompanying declaration, exhibits, and proposed order to be filed with the Clerk of the Court using the CM/ECF system, which will cause notification of filing to be emailed to counsel of record for all parties.

/s/ Leigh Handelman Smollar